**In re Kenneth WOODHOUSE, Jr., Theresa Woodhouse, Debtors.**

**Bankruptcy No. 94–10788.**

United States Bankruptcy Court, D. Rhode Island.

Sept. 8, 1994.

Christopher M. Lefebvre, Pawtucket, RI, for debtors.

Paul M. Giacobbe, Warwick, RI, for Beneficial Mortg. Co. of R.I.

Andrew Richardson, Boyajian, Harrington & Richardson, Providence, RI, for Chapter 13 Trustee.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

The Chapter 13 Debtors seek to treat the second mortgage held by Beneficial Mortgage Company of Rhode Island as wholly unsecured, and to remove said mortgage from their principal residence. In its objection, Beneficial argues that *Nobelman v. American Sav. Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), precludes *any* modification of its lien on the Debtors' home. For the reasons discussed below, based on the authorities cited, and treating the debt to Beneficial as completely unsecured under 11 U.S.C. § 506(a), we conclude that *Nobelman* is not applicable or controlling, and that the Debtors may therefore "strip off" [1] and avoid Beneficial's mortgage lien on their principal residence.

### UNDISPUTED FACTS

Kenneth and Theresa Woodhouse filed for relief under Chapter 13 of the Bankruptcy Code on March 30, 1994. Their principal residence is subject to a $141,688 mortgage with First Federal Savings Bank. Beneficial has a second mortgage on the property with a balance of $10,000, and has no security in any other property of the Debtors. The parties have stipulated that the market value of the subject property is less than the balance due on the first mortgage.[2] The Debtors' plan proposes to *strip off* Beneficial's junior lien, and to treat the entire debt as unsecured, with the result that Beneficial's claim would then be discharged in this bankruptcy.

### DISCUSSION

■ At issue is whether a Chapter 13 Debtor is prohibited, under *Nobelman,* from

---

**1.** We notice that in recent *Nobelman* related litigation, the term "strip off" is applied where a junior mortgagee is totally unsecured as to the debtor's principal residence, while the term "strip down" is still used where a mortgage is partially secured, and partially unsecured.

**2.** Appraisers have estimated the market value of the property at approximately $100,000, and the amount due on the first mortgage is $141,688.

stripping off a *totally unsecured* junior mortgage from his/her principal residence. The Supreme Court in *Nobelman* held that 11 U.S.C. § 1322(b)(2)[3] prohibits Chapter 13 debtors from modifying the rights of secured creditors whose claims are secured only by a mortgage on the debtors' principal residence, and rejected the debtors' attempt under § 506(a)[4] to *reduce* the amount of the lender's claim to the market value of the collateral. The *Nobelman* Court was dealing with the modification of a mortgage that was partially secured and partially unsecured, and did not address whether a Chapter 13 debtor can strip off a mortgage where the underlying claim of a junior mortgagee on the debtor's principal residence is wholly unsecured.

Beneficial contends that under the general holding of *Nobelman* its lien is protected by § 1322(b)(2), and may not be limited or affected, regardless of the value of the security. Curiously, the *Nobelman* Court did state that the parties may look to § 506(a) "for a judicial valuation of the collateral to determine the status of the bank's secured claim." *Id.* Notwithstanding that comment, however, the Court held that the bank, as the holder of a secured claim on the debtors' principal residence, could not have its rights modified in the debtors' Chapter 13 Plan. In the instant case the value of the Debtors' principal residence is far less than the amount owed to even the first mortgagee, and in a liquidation the second mortgagee would receive nothing. Therefore, under § 506(a) (or in any other context for that matter), Beneficial is in every sense the holder of an unsecured claim,[5] and any "rights" it may assert under *Nobelman* by virtue of its security documents are illusory, hyper-technical, and possibly relevant only in law review articles.

Beneficial also argues that our decision in *In re Guilbert*, 165 B.R. 88 (Bankr.D.R.I. 1994), militates in favor of following *Nobelman* here. In that case we acknowledged the purpose of § 1322(b)(2) as protecting creditors whose claims are secured only by a lien on the debtor's home, and in doing so we performed our duty to follow *Nobelman, where it is controlling.* The creditor's claim in *Guilbert* was clearly partially secured— quite the opposite from what Beneficial has in this case, i.e. a totally unsecured claim which provided no value to the creditor's junior lien, and based on that distinction neither *Nobelman* nor *Guilbert* are applicable in the instant case.

Prior to *Nobelman*, this Court had ruled that a Chapter 13 debtor may avoid a wholly unsecured second mortgage on the debtor's principal residence. *See In re Cardinale*, 142 B.R. 42 (Bankr.D.R.I.1992). Immediately in the wake of *Nobelman*, we prematurely assumed that this case had been overruled. History has shown that assumption to be incorrect, however, in that a number of other courts facing this issue have concluded that a Chapter 13 debtor may indeed strip off a wholly unsecured second mortgagee on the debtor's principal residence. *In re Sette*, 164 B.R. 453, 456 (Bankr.E.D.N.Y.1994); *In re Williams*, 161 B.R. 27 (Bankr.E.D.Ky.1993); *In re Moncrief*, 163 B.R. 492 (Bankr.E.D.Ky. 1993); *In re Hornes*, 160 B.R. 709 (Bankr. D.Conn.1993) (Chapter 13 plan could modify rights of mortgagee whose claim was wholly unsecured); *In re Plouffe*, 157 B.R. 198 (Bankr.D.Conn.1993) (a literal reading of § 1322(b)(2) does exclude a mortgagee whose secured interest in the homestead is zero).

■ In *In re Moncrief*, Judge Joe Lee held that § 1322(b)(2) "does not preclude modification by a Chapter 13 plan of the

---

**3.** 11 U.S.C. § 1322(b)(2) states:
(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims....

**4.** 11 U.S.C. § 506 is entitled: Determination of secured status, and states in part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

**5.** Which, in this Court's view, renders Beneficial an unsecured creditor.

'rights' of holders of unsecured claims. It does restrict modification of the 'rights' of holders of secured claims secured only by a security interest in real property that is the debtor's principal residence." Therefore, to escape modification, a claim must be secured to some extent by a security interest in real property that is the debtor's principal residence. *Id.* at 494. With these cases arising Phoenix-like, and unanimously, from the ashes of *Nobelman*, we are constrained to follow suit.[6]

### CONCLUSION

Based upon the foregoing, we join those courts which have held that the § 1322(b)(2) protection applies only to claims that are "secured claims" as defined by § 506(a), and that the claim of a second mortgagee, by definition, is unsecured in fact and in law when the value of the debtor's principal residence is less than the balance owed on the first mortgage. In the instant case, Beneficial would be entitled to the protection of § 1322(b)(2) *only* if it retained at least some security in the property, after satisfaction of the first mortgage. Here there is no such security. Accordingly, Beneficial's underlying claim is discharged, and its lien on the Debtors' residence is avoided and removed.

Enter Judgment consistent with this opinion.

---

**6.** Beneficial certainly makes a point when it argues: *"Nobelman* says that a $200,000 first mortgage on property worth only $150,000 cannot be stripped down to the value of the property. What rationale would permit a second mortgagee with a $50,000 mortgage on that property to have its bargained for claim eliminated in total?"

We had to think quite hard before rejecting that argument, and joining the unanimous body of case law holding that *Nobelman* is not applicable or controlling in these circumstances. *See In re Plouffe,* 157 B.R. 198, 200 (Bankr.D.Conn.1993); *In re Lee,* 161 B.R. 271, 273–74 (Bankr. W.D.Okla.1993).