In re John **CASTELLANOS** and Dalen Castellanos, Debtors.

John **CASTELLANOS** and Dalen Castellanos, Plaintiffs,

v.

PNC BANK, NATIONAL ASSOCIATION and United States of America Dept. of Housing and Urban Development, Defendants.

Bankruptcy No. 5–93–00966.
Adv. No. 5–93–0195.

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

Oct. 7, 1994.

**394**

Joseph Murray, Stroudsburg, PA, for debtors/plaintiffs.

Donna M. Donaher, Pittsburgh, PA, for PNC Bank, defendant.

John A. Morano, Jr., Scranton, PA, for U.S.–HUD, defendant.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

The facts are not in dispute. The Debtors, John and Dalen Castellanos (hereinafter "Debtors"), have filed a complaint under 11 U.S.C. § 506 of the bankruptcy Code in an attempt to "strip down" two of three mortgages against their property.

It is stipulated that a first mortgage lien of Sovereign Bank f/k/a Penn Savings Bank is collateral for an indebtedness of Sixty–Eight Thousand Eight Hundred Ninety–Two and 73/100 Dollars ($68,892.73). It is further stipulated that PNC Bank, N.A., (hereinafter "PNC"), has a second mortgage lien and the United States Department of Housing and Urban Development (hereinafter "HUD"), has a third lien on the property.

At the trial of this matter on May 10, 1994, the Debtors submitted evidence in the form of appraisal testimony that the collateral for these mortgages was worth Sixty–Seven Thousand Five Hundred Dollars ($67,500.00). PNC submitted evidence that the market value was Sixty–Nine Thousand Dollars ($69,000.00). The latter appraisal would indicate that PNC was marginally collateralized by One Hundred Seven and 27/100 Dollars ($107.27) in value behind the first mortgage.

After trial, the court found the value of the property to be Sixty–Seven Thousand Five Hundred Dollars ($67,500.00). The issue now becomes whether the Debtor can "strip off"[1] the second mortgage of PNC Bank and the third mortgage of HUD where the first mortgage fully encumbers the property.

The Defendants contend that *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) prevents the Debtors from modifying their rights including the elimination of whatever lien the mortgage evidences. 11 U.S.C. § 1322(b)(2) reads as follows:

**11 U.S.C. § 1322. Contents of plan.**

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of. secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

In *Nobelman,* the court stated,

"That provision [§ 1322(b)(2) ] does not state that a plan may modify 'claims' or that the plan may not modify 'a claim secured only by' a home mortgage. Rather, it focuses on the modification of the *'rights of holders'* of such claims. By virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioners' home. Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim. It was permissible for petitioners to seek a valuation in pro-

---

1. The term "strip off" has been utilized to describe litigation attempting to remove a totally unsecured junior mortgage from a debtor's principal residence. *In re Woodhouse,* 172 B.R. 1 (Bankr.D.R.I.1994). See also **Daniel C. Fleming and Marianne McConnell,** *The Treatment Of Residential Mortgages In Chapter 13 After Nobelman,* **2 Am.Bankr.Inst.L.Rev. 147 (1994).**

posing their Chapter 13 plan, since § 506(a) states that '[s]uch value shall be determined ... in conjunction with any hearing ... on a plan affecting such creditor's interest.' But even if we accept petitioners' valuation, the bank is still the 'holder' of a 'secured claim,' because petitioners' home retains $23,500 of value as collateral." *Nobelman v. American Savings Bank, supra* at page ——, 113 S.Ct. at page 2109.

■ *Nobelman,* therefore, specifies that even though a mortgage contract makes a creditor a holder of a claim "secured by a lien", that creditor is a "holder of a secured claim" only because the residence retained some value as collateral. In the *Nobelman* case, that value was Twenty–Three Thousand Five Hundred Dollars ($23,500.00) even though the debt was Seventy–One Thousand Three Hundred Thirty–Five Dollars ($71,-335.00). This analysis of *Nobelman* is consistent with that of a leading treatise. 5 *Collier on Bankruptcy,* ¶ 1322.06, page 1322–16.

■ Although the "rights" of a mortgagee are not affected by the amount of its secured claim, the literal reading of 11 U.S.C. § 1322(b)(2) requires the existence of *some* secured claim.

The test as to what degree the Defendants retain a secured claim in the first instance is set forth in 11 U.S.C. § 506(a). That section reads as follows:

**11 U.S.C. § 506. Determination of secured status.**

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff

is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

■ Since the estate's interest in the property is entirely encumbered by the first mortgagee, the Defendants' mortgages are, by statute, unsecured claims.

11 U.S.C. § 1322(b)(2) specifically allows for the modification of the rights of holders of *unsecured claims* without exception to residential mortgage lendings. Therefore, neither the bankruptcy Code nor *Nobelman* provide an impediment to mortgage modification.

We will thus follow the increasingly long line of cases that are in accord with this position and avoid, in their entirety, the mortgage liens of the Defendants.[2]

---

**2.** *In re Woodhouse,* 172 B.R. 1 (Bankr.D.R.I. 1994); *In re Sette,* 164 B.R. 453 (Bankr.E.D.N.Y. 1994); *In re Williams,* 161 B.R. 27 (Bankr. E.D.Ky.1993); *In re Moncrief,* 163 B.R. 492 (Bankr.E.D.Ky.1993); *In re Hornes,* 160 B.R. 709 (Bankr.D.Ct.1993); *In re Plouffe,* 157 B.R. 198 (Bankr.D.Ct.1993); *In re Lee,* 161 B.R. 271 (Bankr.W.D.Okl.1993); *In re Brown,* 1993 WL 544385 (Bankr.E.D.N.C.1993); *In re Kidd,* 161 B.R. 769 (Bankr.E.D.N.C.1993). *See also Comments in In re Gelletich,* 167 B.R. 370 (Bankr. E.D.Pa.1994).