**In re Michael CERVELLI, Debtor.**

**Bankruptcy No. 96–41744 (WFT).**

United States Bankruptcy Court,
D. New Jersey.

Oct. 20, 1997.

Stem, Lavinthal, Norgaard & Daly, Timothy J. Matteson, Englewood, NJ, for Debtor.

Joel Ackerman, Zucker, Goldberg, Becker & Ackerman, Mountainside, NJ, for Secured Creditor Ocwen Federal Bank, FSB.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

This matter comes before the Court upon Motion of the debtor, Michael Cervelli

ate since Code § 327(b) is equally inapplicable to the receiver.

("debtor"), to "strip-off" the unsecured claim of the second mortgagee in this matter, Ocwen Federal Bank, FSB ("Ocwen" or "mortgagee"), pursuant to §§ 506(a) and 1322(b)(2) of the Bankruptcy Code and to treat the entire unpaid balance of such claim as wholly unsecured under the debtor's Chapter 13 Plan.[1] The debtor also seeks a determination by this Court that the mortgage held by Ocwen is not subject to the protection of the anti-modification provisions of § 1322(b)(2) of the Bankruptcy Code, raising, *inter alia* issues concerning the mortgagee's interest in "additional collateral" as further support for its strip off motion. Ocwen opposes the debtor's Motion in a Brief and Certification filed July 7, 1997 arguing that the debtor is not entitled to strip off Ocwen's lien because the protection afforded by the anti-modification provision applies in this case even where, as here, the second mortgage is completely unsecured. A hearing was held before this Court on September 10, 1997 at which time this Court reserved decision.

The issues raised by this matter are core proceedings as defined by Congress in 28 U.S.C. § 157. The within Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FINDINGS OF FACT

The essential facts of this matter are not in dispute and are summarized as follows. Primarily, the parties have agreed that based on the current market value of the debtor's real property as found below, the mortgage held by Ocwen is wholly unsecured.

1. On February 16, 1989, the debtor executed and delivered a first mortgage to Hudson Mortgage Co., Inc. in the amount of $130,000.00 on the debtor's single family dwelling and principal residence located at 414–416 North 8th Street, Fairview, New Jersey (the "Property"). Thereafter, the mortgage was assigned to Federal Home Loan Mortgage Corporation ("FHLMC").

2. One month later, on March 17, 1989, the debtor and his wife, Susan Cervelli, executed a second note in favor of The Money Store in the sum of $40,700.00. The Note was secured by a second mortgage on the Property dated March 17, 1989. The second mortgage was properly recorded in the Bergen County Clerk's Office on March 28, 1989 and then assigned by the Money Store to Ocwen.

3. On or about July 1, 1996 the debtor and Susan Cervelli defaulted on their obligations under the second mortgage note. A foreclosure action was then commenced on January 14, 1996 in the Superior Court of New Jersey.

4. On December 19, 1996, the debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code thereby staying foreclosure proceedings pursuant to § 362 of the Code.

5. Significantly, by the within Motion, the debtor seeks to strip off the second mortgage lien on the Property pursuant to §§ 506(a) and 1322(b)(2) of the Bankruptcy Code. The debtor has submitted an appraisal which values the Property at $124,000.00 with a payoff figure to Federal, the first mortgagee, of $133,862.53. The debtor indicates that the payoff figure on the second mortgage held by Ocwen is approximately $30,000. At the hearing on this matter on September 10, 1997, counsel for the parties stipulated that Ocwen accepts the debtor's appraised value of the property at $124,000.00 (T 4 ).[2]

6. Finally, for purposes of bifurcation and strip off of Ocwen's lien under §§ 506(a) and 1322(b)(2), the Court notes that the debtor has made a further allegation that the second mortgage is encumbered by "additional collateral," specifically an assignment of rents, and for this reason also, the debtor argues

---

1. It has been recognized by the courts that in a bankruptcy context, a lien "strip-off" occurs when an entirely unsecured lien is removed, whereas a lien "strip down" occurs when a partially secured lien is bifurcated and only the unsecured portion is removed. *In re Tam Ly Lam and Mai Thi Lam*, 211 B.R. 36 (9th Cir. BAP 1997); *In the Matter of Sanders*, 202 B.R. 986, 987 (Bankr.D.Neb.1996).

2. Prior to the parties agreeing on the value of the Property, Ocwen had submitted its own appraisal of the Property which indicated a fair market value of $165,000.00.

that Ocwen is outside the protection afforded a mortgagee's claim under § 1322(b)(2).

7. In addition to the standard boilerplate security interest clause within the mortgage document, the Court notes that ¶ 19 of the mortgage provides:

> *Assignment of Rents: Appointment of Receiver—As additional security hereunder,* Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.
>
> *Upon acceleration under Paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of, and manage the Property, and to collect the rents of the property including those past due.* All rents collected by Lender or the receiver shall be applied, first, to the payment and costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Mortgage. Lender and receiver shall be liable to account only for those rents actually received. (Mortgage dated March 17, 1989, (Exh. D–1)). (emphasis added).

Based upon the foregoing language, the debtor argues in essence that the above referenced ¶ 19 provides an immediate availability and right to take the rents upon default, and that it is this immediate availability and right to the rents upon default, which takes the mortgagees interest beyond the fee simple bundle of interests and provides additional security to Ocwen so as to allow for a strip off of Ocwen's lien (T 8).

---

**3.** Post the Supreme Court's decision in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the courts have essentially limited the anti-modification provision in two ways within the language and spirit of the provision. Comment, *From Dewsnup to Nobelman to the Bankruptcy Reform Act of 1994: Did Congress Intend To Change "Pre–Amendment" Law When It Enacted § 1322(c)(2),* 30 Loy. L.A. L.Rev. 841, 851 (January 1997). The Comment states:

> The first limitation on the anti-modification clause is that a homestead mortgagee secured by additional collateral might not benefit from § 1322(b)(2)'s anti-modification clause. Second, courts will not afford homestead mortgagees the protection of § 1322(b)(2)'s anti-modification clause if the homestead mortgagee's claim is determined, after a § 506(a) valuation, to be completely unsecured. *Id.*

## DISCUSSION

The Motion *sub judice* raises two issues concerning the proper scope and limitation of the protection afforded residential mortgagees by Congress under the anti-modification provision, § 1322(b)(2) of the Bankruptcy Code.[3]

Section 1322(b)(2) provides:

Subject to subsections (a) and (c) of this section, the plan may—

> (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; (emphasis added).

This Court has previously considered the first of these issues in its Opinion in *In re Eastwood,* 192 B.R. 96 (Bankr.D.N.J.1996), wherein this Court discussed at length, the issue of exactly when, in light of the language contained within a mortgage document, a claim can be considered secured "only by an interest in real property that is the debtor's principal residence." 192 B.R. at 102. In *Eastwood,* the Court specifically analyzed Third Circuit and other caselaw with respect to the issue of what constitutes "additional collateral" for purposes of removing the mortgagee's claim from the protection afforded by § 1322(b)(2), and found that where the boilerplate language contained within a residential home mortgage document which is the debtor's principal residence makes no attempt to reach collateral that is personalty and not realty, the mortgagee is within the protection of the anti-modification provision of § 1322(b)(2).

The Court's finding in *Eastwood* was buttressed by reference to state law, under prin-

ciples enunciated in *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), wherein, pursuant to N.J.S.A. 46:3–16, *Buildings and other things included in deeds to land,* the property held by the debtor included substantially the same interests as found in the mortgage in question. Therefore, in that case, this Court held that the mortgage was not subject to strip down to the fair market value of the property, pursuant to § 506(a) of the Bankruptcy Code and could not be bifurcated into secured and unsecured components by the debtor's Chapter 13 Plan. 192 B.R. at 106.[4]

The Court's reasoning in *Eastwood* was cited subsequently by District Court of New Jersey Judge Lechner, in his published Opinion, *In re Rosen,* 208 B.R. 345 (D.N.J.1997), wherein it was specifically held that a Chapter 13 debtor could not strip down the lien on a mortgage on the debtor's principal residence on the theory that "rents and profits" language in the mortgage, gave the mortgagee a security interest in collateral other than the debtor's principal residence. The *Rosen* Court reasoned that rents and profits would not exist but for the mortgaged property, and that the language in question did not, as a practical matter, increase the security available to the mortgagee. 208 B.R. 345. In the present matter, the Court is called upon again to apply this analysis in the context of the language of the mortgage document herein in determining whether or not, with the assignment of rents provision, the mortgagee took an interest in "additional collateral."

Secondly, the Court must consider the other limitation on § 1322(b)(2) as has been interpreted and applied by the courts, that is, the issue of whether or not the mortgagee's claim is protected thereunder where the mortgagee's claim is determined to be completely unsecured.[5] Pursuant to § 1322(b)(2) as referenced above, the debtor's plan may "modify the rights ... of holders of unsecured claims." *See In the Matter of Plouffe,* 157 B.R. 198 (Bankr.D.Conn.1993); and *In re Castellanos,* 178 B.R. 393, 394 (Bankr. M.D.Pa.1994). This Court briefly visited this issue in its Opinion in *In re Libby,* 200 B.R. 562 (Bankr.D.N.J.1996), wherein the Court held *inter alia* that in the context of a completely unsecured third mortgage, it may be treated as an unsecured claim, which is not subject to protection of the anti-modification provisions of § 1322(b)(2). 200 B.R. at 568.

Upon review of the record in this matter, as well as the case law cited by the parties and independently researched by the Court, the Court holds first that following this Court's reasoning in *Eastwood,* as well as the District Court's recent Opinion in *Rosen,* the language of ¶ 19 of the mortgage document in question, granting the mortgagee Ocwen an assignment of rents upon default in the context of a single family residential mortgage document concerning debtor's principal residence, as is the case here, grants the mortgagee, an interest in nothing more than the interests which run with the land pursuant to *N.J.S.A.* 46:3–16. The Court further finds that this provisions makes no attempt to reach collateral that is personalty and not realty, and that therefore the Ocwen mortgage is not subject to strip off under the "additional collateral" limitation of § 1322(b)(2). On this issue, the *Rosen* Court cites the relevant definition of real property provided for at *N.J.S.A.* 46:3–16,

---

4. Section 506(a) of the Bankruptcy Code defines allowed secured and unsecured claims as follows:

   An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value

shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. As has been recognized by the Third Circuit, "section 506(a) limits a creditor's secured claim to the value of its collateral." *In re Hammond,* 27 F.3d 52 (3rd Cir.1994).

5. In the Matter *sub judice,* a 506 valuation hearing was not required as counsel for the parties, at the September 10, 1997 hearing stipulated to the value of the Property at $124,000.00.

which statute was originally relied upon by this Court in *Eastwood*, 192 B.R. at 104. The statute provides:

> Every deed conveying land shall, unless an exception be made therein, be construed to include all singular buildings, improvements, ways, woods, waters, watercourses, rights, liberties, privileges, hereditament and appurtenances to the same belonging or in anyway appertaining; and the reversion and reversions, remainder and remainders, *rents, issues and profits thereof,* and of every part and parcel thereof. 208 B.R. at 345 (citing *N.J.S.A.* 46:3–16) (emphasis added).

In rejecting the debtor's argument regarding additional collateral, the *Rosen* Court reasoned:

> The definition contained in N.J.S.A. 46:3–16 essentially mirrors the language of the Secured Property Provision found in the Mortgage, including the reference to rents and profits. Accordingly, the language in the Secured Property Provision, particularly the reference to rents and profits, does not attempt to create a security interest in additional collateral beyond that granted in the Residence Property. Indeed, rents and profits would not exist but for the real property. 208 B.R. at 349.

As applied to the facts of this case, the Court is well satisfied that extending the Court's analyses in *Rosen* and *Eastwood*, cited herein, the addition of an assignment of rents provision in the mortgage document itself, which provides the mortgagee with a right to rents upon default in the context of this single family residential mortgage document does not, in and of itself, remove the mortgagee from the protection afforded it under § 1322(b)(2). However, the second prong of this analysis, as respects the ability of this debtor to strip off a completely unsecured claim requires more in depth consideration.

**Split of Authority**

■ As to this second issue, the Court finds a split of authority as to whether or not the United States Supreme Court decision in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) holding that § 1322(b)(2) bars a Chapter 13 plan from modifying the rights of holders of claims secured only by the debtor's principal residence, applies to holders of *totally unsecured* claims.[6] (*See In re Lam,* 211 B.R. 36, 39 (9th Cir. BAP 1997); *In re Fraize,* 208 B.R. 311 (Bankr.D.N.H.1997), and *In the Matter of Sanders,* 202 B.R. 986 (Bankr.D.Neb.1996) recognizing the split). Upon a detailed and thorough review of the current status of the law, as with the "additional collateral" limitation analyzed in *Eastwood,* some courts have adopted an *expansive* reading of the *Nobelman* decision, while other courts have more *narrowly* construed the Supreme Court's prohibition on lien stripping as outlined in *Nobelman,* by concluding that Congress intended to strictly limit the protection of claims under § 1322(b)(2).[7]

■ The vast majority of courts however to have considered this specific limitation on the ability of a debtor to strip off a totally *unsecured claim* have construed *Nobelman* narrowly, by finding that the Bankruptcy Code's anti-modification provision, § 1322(b)(2), does *not* apply to holders of totally unsecured claims. *In re Plouffe,* 157 B.R. 198 (early and often cited decision holding that to be entitled to protection of § 1322(b)(2), prohibiting any modification of rights of a creditor whose claim is secured solely by interest in the debtor's homestead, the second mortgagee must have at least *some interest* in property securing its claim after satisfaction of the senior mortgage; wholly unsecured second mortgage can be reduced to value of zero and treated as unsecured claim.); *In re Hornes,* 160 B.R. 709 (Bankr.D.Conn.1993) (in depth analysis parsing the language of § 1322(b)(2) and considering its treatment in light of *Nobelman,*

---

**6.** *Nobelman* held that the bifurcation of a home mortgage into secured and unsecured portions, and modification of the unsecured deficiency claim, is not permitted in a Chapter 13 case with respect to a mortgage on only the debtor's principal residence.

**7.** *See Eastwood,* 192 B.R. at 101.

finding that a Chapter 13 plan could modify the rights of junior mortgagee whose claim was wholly unsecured, mortgagee did not qualify as creditor whose claim was "secured by an interest in property that was debtor's principal residence," within meaning of statute); *In re Purdue*, 187 B.R. 188 (S.D.Ohio 1995) (allowing strip off under § 506(a), holding that second mortgagees claim does not include secured claim component where value of residence is less than senior mortgage lien); *Wright v. Commercial Credit Corp.*, 178 B.R. 703 (E.D.Va.1995) (first District Court decision concluding prohibition against modification applies only when debtor has some equity in residence, after satisfaction of prior liens; prohibition against lien stripping does not apply when creditor's claim is completely unsecured); *In re Sette*, 164 B.R. 453 (Bankr.E.D.N.Y.1994) (treating entirely unsecured second mortgage lien as general unsecured claim and avoiding lien in its entirety pursuant to 11 U.S.C. 506(a) and (d)); *In re Castellanos*, 178 B.R. 393 (Bankr. M.D.Pa.1994) (applying the test under § 506(a) to determine whether the protection of the anti-modification clause applies and then allowing modification of unsecured claim under § 1322(b)(2)); *In re Moncrief*, 163 B.R. 492 (Bankr.E.D.Ky.1993) (holding that § 1322(b)(2) does not preclude modification by a Chapter 13 plan of the 'rights' of holders of unsecured claims, but rather restricts modification of the 'rights' of holders of *secured* claims secured only by a security interest in real property that is the debtor's principal residence); *In re Mitchell*, 177 B.R. 900 (Bankr.E.D.Mo.1994) (allowing strip off of unsecured claim citing a "plethora" of cases *post-Nobelman*, reaching the same result); *In re Thomas*, 177 B.R. 750 (Bankr.S.D.Ga. 1995) (claim must be secured in some way by the residence to be entitled to protection against modification); *In re Lee*, 177 B.R. 715 (Bankr.N.D.Ala.1995) (claims of third and fourth mortgagees could properly be treated as unsecured where value of Chapter 13 debtor's residence was less than balance owed on first and second mortgages); *In re Williams*, 161 B.R. 27 (Bankr.E.D.Ky.1993) (determining that wholly unsecured lien "differs materially" in character from the mortgage lien involved in *Nobelman*, and allows strip off); *In re Woodhouse*, 172 B.R. 1 (Bankr.D.R.I.1994) (adopting majority view, citing cases arising "Phoenix like and unanimously, from the ashes of *Nobelman*"). It must be noted however, that inherent in the reasoning of these decisions espousing the majority view, is the significant caveat that the rights of a mortgagee, which is the holder of a secured claim *in any amount, however slight, may not* be modified in *any way* if that claim is secured only by a security interest in real property that is the Chapter 13 debtor's principal residence. 211 B.R. 36.

The most recent and comprehensive review of this issue is by the United States Bankruptcy Appellate Panel of the Ninth Circuit in *In re Lam*, 211 B.R. 36, wherein as in the *case sub judice*, Chapter 13 debtors sought to have a lien on their primary residence "stripped off" as wholly unsecured. Adopting the majority view, the Bankruptcy Appellate Panel reversed the prior decision of the Bankruptcy Court[8] in that case and ruling in favor of strip off, held that the Bankruptcy Code's anti-modification provision does not extend to "secured" creditors holding *completely unsecured claims*. In reviewing the *Nobelman* decision, the *Lam* Court recognized that in *Nobelman*, the debtors had argued that since § 506(a) designates a claim as secured only to the extent of the value of the property, the unsecured portion of the claim could be "modified" or removed under § 1322(b)(2). Since the debtor's plan was to pay off the secured portion

---

8. It should be noted that the minority view has also been adopted by Bankruptcy Judge Keith M. Lundin of Tennessee in his treatise on Chapter 13 bankruptcy. See Lundin, Keith M., Chapter 13 Bankruptcy, 2nd Edition, § 4.46, p. 4–56. As was recognized by the *Lam* Court: "In that treatise, Judge Lundin concludes the protection of § 1322(b) extends to the wholly undersecured lien creditor based on the rights analysis of *Nobelman*." 211 B.R. at 39. The Bankruptcy Court in *Lam* had relied on Lundin's analysis which states in essence that in the language cited above, the "trigger" for Justice Thomas's protection of rights analysis is the existence of a lien, not the presence of value to support the lien. 211 B.R. at 39. As did the 9th Circuit Bankruptcy Appellate Panel, this court rejects this view in favor of the emphasis on the necessity a 506(a) valuation under *Nobelman*.

of the mortgage through payments, the debtor argued § 1322(b)(2) allowed unconditional modification of the bank's remaining unsecured claim. 211 B.R. at 38. The Ninth Circuit Bankruptcy Appellate Panel, recognized that the *Nobelman* Court rejected the debtor's argument, focusing on the words of Justice Thomas, who in writing for the majority in language that has been debated by all courts to have considered this issue, reasoned:

> This interpretation fails to take adequate account of § 1322(b)(2)'s focus on "rights." That provision does not state that a plan may modify "claims" or that the plan may not modify "a claim secured only by" a home mortgage. Rather, it focuses on the modification of the "rights of holders" of such claims. By virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioners' home. *Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim.* It was permissible for petitioners to seek a valuation in proposing their chapter 13 plan, since § 506(a) states that "such value shall be determined ... in conjunction with any hearing ... on a plan affecting such creditors interest." *But even if we accept petitioners' valuation. the bank is still the "holder" of a "secured claim", because petitioners' home retains $23,500 of value as collateral.* The portion of the bank's claim that exceeds $23,500 is an "unsecured claim component" under ·§ 506(a), [*U.S. v. Ron Pair Enterprises, Inc.*,] 489 U.S. 235, 239, n. 3, 109 S.Ct. 1026, 1030 n. 3, 103 L.Ed.2d 290 (1989) (internal quotation marks omitted); how-

ever, that determination does not necessarily mean that the "rights" the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim ... 508 U.S. at 327, 113 S.Ct. at 2110. (emphasis added).

In essence, the *Lam* Court rejected the Bankruptcy Court's reliance on *Nobelman's* focus on the *rights of holders of secured claims* rather than on the *value of the claim itself.* In rejecting the Bankruptcy Court's approach as applied to wholly unsecured claims, the *Ninth Circuit* distinguished Justice Thomas' above-referenced analysis in *Nobelman* from the case before the Court stating:

> The *Nobelman* decision prohibiting the removal of a partially unsecured claim is decidedly different from requiring a chapter 13 debtor to continue to pay the mortgage contract when the mortgage lien attaches to nothing and the lien ceases to be a secured claim. *Justice Thomas's statements were made in the context of the issue before the Supreme Court: the bifurcation of a claim partially secured and partially unsecured.*
>
> The basic concept of the bankruptcy judge's analysis is that the *mere presence* of the lien carries with it certain rights *regardless of whether the lien has validity as a lien. A lien is "A charge or security or incumbrance upon property."* (*Black's Law Dictionary. Fourth Edition 1968*). *If a lien has no "security" interest in the property of a debtor, its status as a lien is questionable,* 211 B.R. at 39 (emphasis added).[9]

This Court agrees with the Ninth Circuit Bankruptcy Appellate Panel in *Lam.*[10] More-

---

**9.** Upon further research, in attempting to understand *Nobelman* in its proper context, the court finds it illuminating that, as has been recognized, as Texas has the most restrictive law of any United States jurisdiction governing junior liens on homesteads, the question of junior liens did not present itself. One legal commentator has stated:

> In Texas, a debtor's homestead is exempt from seizure through creditor process unless a creditor's lien is (1) a purchase money lien, (2) a property tax lien, or (3) a materialman's lien for improvements to the property. Therefore, home equity loans and other forms of junior

mortgages, very popular in many jurisdictions, are not permitted in Texas. Permitting stripping of junior liens but protecting purchase money liens would have little impact on mortgage lending in Texas but would have a large impact on consumer lending outside Texas. *Lien Stripping After Nobelman*, 27 Loy, L.A. Rev. 541, 582 (January, 1994).

**10.** In *Lam*, the Ninth Circuit recognized:

> The legislative history indicates that Congress intended to distinguish between secured and unsecured claims, rather than between secured and unsecured creditors. *In re Hornes*, 160

over, as was recognized by the *Lam* Court, this approach has been adopted by Professor Collier. 211 B.R. at 40. On this issue, Collier most recently reasons:

> The *Nobelman* opinion strongly suggests, however, that if a lien is completely undersecured, there would be a different result. The opinion relies on the fact that, even after bifurcation, the creditor in the case was "still the 'holder' of a 'secured claim'" because petitioners' home retained $23,000 of value as collateral. If the *creditor had held a lien on property that had no value (perhaps because the property was fully encumbered by prior liens), then under this analysis, the creditor would not have been a "holder of a secured claim" entitled to protection by section 1322(b)(2). Thus since Nobelman, such completely undersecured claims have been found to be modifiable under section 1322(b)(2).* 8 *Collier on Bankruptcy,* § 1322.06(1)(a) at 1322–21 (L. King 15th Ed.1997) (emphasis added).

In further discussing the split of authority in this area, the Court is aware that a minority of recent decisions, including a decision of a fellow court within the District of New Jersey, have expansively construed the Supreme Court's prohibition on lien stripping as outlined in *Nobelman* as applied to this issue, by concluding that pursuant to § 1322(b)(2), the debtor is prohibited from stripping off a totally unsecured second or subsequent mortgage claim. *In re Fraize,* 208 B.R. 311 (Bankr.D.N.H.1997); *In re Neverla,* 194 B.R. 547 (Bankr.W.D.N.Y.1996); *In re Barnes,* 199 B.R. 256 (Bankr.S.D.N.Y. 1996) and *In re Jones,* 201 B.R. 371 (Bankr. D.N.J.1996). Most notably, Judge Stripp in *In re Jones,* 201 B.R. 371 (Bankr.D.N.J.1996)

held that a second mortgage claim, which was entirely unsecured because the amount of the first mortgage exceeded the value of the debtor's residence, was not subject to modification, unless the claim was secured by property other than the residence. In his decision, Judge Stripp rejected the debtor's argument that the second mortgage claim was required to be secured by at least some value in their residence for the anti-modification provision to apply. 201 B.R. at 373. Specifically, the *Jones* Court rejected the debtor's argument that a mortgage must be a fully or partially "secured claim" under § 506(a). 201 B.R. at 373.

From a theoretical standpoint, the *Jones* Court as representative of the minority view, relies on *Nobelman's* recognition that Congress chose the word "claim" instead of repeating the term "secured claim" in the anti-modification provision, indicating that because the Code defines "claim" as both a secured and an unsecured right to payment, Congress did not intend to require the mortgagee to be fully secured for the anti-modification provision to apply. 201 B.R. at 371 (citing 508 U.S. at 330–32, 113 S.Ct. at 2111). Second, the *Jones* Court relied on *Nobelman's* statement that "by virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on the petitioner's home." 201 B.R. at 374 (citing 508 U.S. at 328–30, 113 S.Ct. at 2110).

From a practical standpoint, the *Jones* Court, then went on to consider the consequences if the court were to adopt the debtors' interpretation of *Nobelman,* whereby if accepted, a creditor's right to prevent modification of its mortgage could hinge on merely one dollar of value. 201 B.R. at 374.[11] In

---

B.R. 709, 718 (Bankr.D.Conn.1993); *In re Plouffe,* 157 B.R. at 200. As the *Hornes* Court explained, "The Code does not generally classify creditors based on the existence of a piece of paper purporting to give a creditor rights in specified collateral, but rather on whether a creditor actually holds a claim supported by valuable estate property." *In re Hornes,* 160 B.R. at 715. Congress' emphasis on claims supports their position that the lienholder must be a holder of a secured claim, rather than merely a holder of a security interest, to be protected from modification under section 1322(b)(2). 211 B.R. at 40

Moreover, *Black's Law Dictionary* defines the term "secured" as meaning "supported or backed by collateral."

**11.** Judge Stripp provided the example of a scenario wherein under the debtors' interpretation, a second mortgagee would be able to collect the full value of its claim if the debtor owed $99,999.00 under its first mortgage, and its residence was valued at $100,000.00. The *Jones* Court reasoned "that single dollar of value securing the second mortgagee's claim would allow full collection. On the other hand, if the residence were valued at $99,998.00, there would be no value to

sum, the *Jones* Court concluded that because the second mortgagee possessed a security interest in the debtors' property *via its mortgage contract,* a modification of that mortgage would constitute a modification of the rights of a holder of a claim secured by security interest in the debtors' principal residence. Therefore, the mortgagee was protected by § 1322(b)(2) and the debtors were disallowed modification under the Chapter 13 Plan unless the mortgagee's claim was also secured by property other than the debtor's principal residence. 201 B.R. at 374.

Upon review and careful consideration, keeping in mind the expansive and thoughtful construction afforded the *Nobelman* analysis by Judge Stripp in *Jones* on this issue, as applied to the facts of the case *sub judice,* the Court declines to follow *Jones* in favor of the majority view as adopted by the Ninth Circuit's analysis in *Lam,* which has been referred to at length above. The Court is persuaded that the majority view encompasses the correct resolution of this issue and enunciates the proper analysis of the *Nobelman* ruling as respects the application of § 1322(b)(2) in the context of wholly unsecured second and subsequent mortgage claims. This Court does so find for the following reasons.

First, as to the theoretical interpretation of the language employed by the *Nobelman* Court, as relied upon by the minority view, with respect to Congress' choice of the word "claim" in § 1322(b)(2) in the phraseology "other than a claim secured only by a security interest in real property that is the debtor's principal residence," this Court rejects such an emphasis in favor of *Nobelman's* use of § *506(a)* to define the phrase in § 1322(b)(2) "holder of a secured claim." The Bankruptcy Court of the District of Rhode Island in *In re Woodhouse,* 172 B.R. at 2 similarly rejected the minority view's emphasis on the word "claim" wherein, the Court in recognizing that the value of the debtors' principal residence was far less than the amount owed to even the first mortgagee,

secure the second mortgagee's claim, and it could be modified and treated as totally unse-

and in a liquidation the second mortgagee, Beneficial, would receive nothing stated:

> Therefore, under § 506(a) (or in any other context for that matter), Beneficial is in every sense the holder of an unsecured claim, and any "rights" it may assert under *Nobelman* by virtue of its security documents are illusory, hyper-technical, and possibly relevant only in law review articles. 172 B.R. at 2.

Moreover, in adopting the majority view, as to this aspect of the issue, the Court further finds the reasoning of the Bankruptcy Court of the District of Connecticut in *In the Matter of Plouffe,* 157 B.R. 198 persuasive, wherein the court stated:

> I find it evident from the *Nobelman* ruling that for a homestead mortgagee to claim the protection against modification granted by § 1322(b)(2), *the mortgagee must qualify as the holder of a secured claim to some extent as determined by § 506(a).* There is neither a logical nor rational basis for a creditor holding a completely unsecured claim to be protected from claim modification in a bankruptcy case simply because the creditor had obtained a lien on the homestead pre-petition. "Treatment under the Code turns on whether a *claim* is secured or unsecured." (citation omitted). 157 B.R. at 200.

Second, as to the minority view's practical concern that in a situation where the second mortgagee has a secured claim of $1 in value, under *Nobelman* no modification of the secured creditor's rights is permissible under § 1322(b)(2), the Ninth Circuit considered the concern to be "unfounded" and held that the *In re Plouffe* Court had correctly interpreted *Nobelman* on this issue.

Third, and perhaps most significantly, from a public policy perspective, the Court is convinced that the majority's reliance on the necessity of a § 506(a) valuation is in keeping with the legislative intent of Congress in framing § 1322(b)(2) with the goal of encouraging home mortgage lending. Justice Stevens in his concurring Opinion in *Nobelman,* stated that "protecting 'holders of secured

cured." 201 B.R. at 374.

claims' is consistent with the congressional intent of encouraging home lending by residential mortgagees." 211 B.R. at 40. The *Lam* Court then went on to state that "there are no such concerns when dealing with the second mortgage market." *In re Lam*, 211 B.R. at 40 (citing *In re Plouffe*, 157 B.R. at 200). As to this point, The Ninth Circuit in *Lam* further reasoned:

> "Thus, because second mortgagees are not in the business of lending money for home purchases, the same policy reasons for protection of first mortgagees under section 1322(b)(2) do not exist for second mortgagees." 211 B.R. at 40.

The practice of treating junior lienholders as subject to the general rule allowing for modification of claims thereby excepting them from the narrow category of lenders to whom the protection of § 1322(b)(2) is afforded, is further supported by several legal treatises on public policy grounds. One commentator has noted:

> In proposed bankruptcy legislation introduced in 1992 and 1993, legislators repeatedly evidenced a willingness to distinguish between purchase money home mortgage lenders and junior lienors. This distinction is reflected in the preferential status accorded purchase money financing in the Uniform Commercial Code as well as elsewhere in the Bankruptcy Code. Given that the anti-modification provision of § 1322(b)(2) is an exception to the general rule that all secured creditors are subject to cramdown in rehabilitative bankruptcy proceedings; the tendency has been to construe the exception to cover only a narrow category of lenders and deny special treatment to credit providers who happen to take a security interest in the debtor's homestead rather than enabling the debtor to acquire the homestead itself. The proposed legislation therefore treats junior liens on the debtor's homestead as subject to the general rule permitting lien stripping rather than as qualifying for the special, narrow exception reserved for a privileged category of lenders. *Lien Stripping after Nobelman*, 27 Loy. L.A. L.Rev. 541, 582 (January, 1994).

█ On balance, for the reasons aforestated, when weighing the right of a Chapter 13 debtor to a "fresh start," against the right of a non-purchase money lender to have his lien protected from modification in instances where such lien on the debtor's residence is *wholly* unsecured, this Court decides in favor of the Chapter 13 debtor. However, having so found, the Court specifically cautions that the right of a Chapter 13 debtor to a fresh start in such a circumstance is *conditioned* upon the debtor's successful completion of a Chapter 13 Plan. Pursuant to § 1328 of the Bankruptcy Code, the debtor is granted a discharge "as soon as practicable after completion by the debtor of all payments under the plan ..." 11 U.S.C. § 1328(a). Section 1327(b) of the Bankruptcy Code further provides:

> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor. 11 U.S.C. § 1327(b).

Underlying the Court's ruling today is a recognition of the philosophy that a Chapter 13 confirmation is a contract between the debtor and his or her creditors. In order for the debtor to receive a fresh start and void a wholly unsecured second or subsequent mortgage lien, the debtor must live up to its part of the confirmation contract and complete the Chapter 13 Plan. It follows then, that a breach of the confirmation contract by the debtor, will return the parties to the status quo as of the time of the filing insofar as the validity of Ocwen's second mortgage is concerned. The second mortgage lien is avoided and removed of record for the reasons aforestated, only upon the successful completion of the debtor's Chapter 13 plan.

### CONCLUSION

Based upon the foregoing, this Court joins with the majority of courts which have held that the protection afforded under § 1322(b)(2) applies only to claims that are "secured claims" as defined by § 506(a), and that the claim of a second mortgagee, "by definition is unsecured in fact and in law when the value of the debtor's principal residence is less than the balance owed on the

first mortgage." *In re Woodhouse,* 172 B.R. 1 (Bankr.D.R.I.1994). As applied to the facts herein, Ocwen would *only* be entitled to the protection of § 1322(b)(2) if it retained at least some security in the property, after satisfaction of the first mortgage. Here there is no such security. Ocwen is not the holder of a secured claim for purposes of § 1322(b)(2) and, as held in *Plouffe,* 157 B.R. at 200, only its rights as the holder of an *unsecured claim* are being modified by the debtor's plan. Pursuant to the Court's discretion under § 1327(b) however, as cited above, the second mortgage lien is avoided and removed of record upon the successful completion of the debtor's Chapter 13 Plan.

### ORDER GRANTING MOTION OF DEBTOR TO STRIP OFF SECOND MORTGAGE CLAIM OF OCWEN FEDERAL BANK

This matter having come before the Court by way of debtor, Michael Cervelli, to strip off the wholly unsecured second mortgage of Ocwen Federal Bank, FSB ("Ocwen") pursuant to §§ 506(a) and 1322(b)(2) of the Bankruptcy Code; and the Court having rendered its written Opinion this date, the terms of which are incorporated herein by reference;

**IT IS** on this 20th day of October, 1997

**ORDERED** that the Motion of debtor to strip off the wholly unsecured second mortgage claim of Ocwen be and is hereby granted.

**IT IS FURTHER ORDERED** that pursuant to §§ 1327 and 1328 of the Bankruptcy Code, the second mortgage lien held by Ocwen may be removed of record only upon the successful completion of the debtors Chapter 13 Plan.