**In re Patrick Henry SMITH, Debtor.**

**Patrick Henry SMITH, Plaintiff,**

v.

**FIRST CITIZENS BANK, Defendant.**

Bankruptcy No. 96–13955.
Adversary No. 97–5021.

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Jan. 7, 1998.

Timothy B. Latimer, Jackson, TN, for Plaintiff/Debtor.

Mark D. Johnston, Dyersburg, TN, for Defendant.

William L. Guy, Jackson, TN, Chapter 13 Trustee.

**MEMORANDUM OPINION AND ORDER RE COMPLAINT TO DETERMINE EXTENT OR VALIDITY OF FIRST CITIZENS BANK AND OBJECTION TO CONFIRMATION BY FIRST CITIZENS BANK**

G. HARVEY BOSWELL, Bankruptcy Judge.

This Court conducted a trial on this matter on December 18, 1997, pursuant to FED. R.BANKR.P. 7052. This is a core proceeding. 28 U.S.C. § 152(b)(2). After reviewing the testimony from the hearing and the record as a whole, the Court makes the following findings of fact and conclusions of law. FED. R.BANKR.P. 7052.

## I. FINDINGS OF FACT

The facts in this case are fairly simple and ones which the parties stipulated to at trial. The debtor owns a farm which consists of sixty-three acres and his primary residence. The defendant in this adversary proceeding holds a third mortgage on the property in the amount of $25,000.00. Farmers Home (FSA) holds the first mortgage on the property in the amount of $111,405.14. Volunteer Bank holds the second mortgage on Smith's property for $32,310.50. Smith's farm is only valued at $135,000.00.

Because the outstanding debt on Smith's property exceeds its value, the debtor filed a "Complaint to Determine Extent/Validity of Lien Held by First Citizens Bank." In this complaint, Smith seeks a determination from this Court as to the validity of First Citizens' lien and whether or not the bank should be paid as a secured or unsecured creditor.

As a result of the facts of this case, First Citizens also filed an objection to confirmation of Smith's chapter 13 plan in the debtor's main case. In this objection, First Citizens alleges that Smith's plan improperly classifies the bank's claim as unsecured, fails to provide for an adequate value of the collateral held by the bank, and fails to provide for an appropriate rate of interest on the bank's secured claim. At the trial on these matters, First Citizens did not present any proof as to the allegations set forth in their objection.

## II. CONCLUSIONS OF LAW

In this case, the debtor is asking the Court to determine the extent and/or validity of First Citizens' lien. The determination as to whether or not a creditor is entitled to secured status is governed by § 506 of the Bankruptcy Code. Additionally, First Citizens is objecting to the debtor's plan based on its failure to classify the bank as a secured creditor. Even though First Citizens does not cite it in their objection, 11 U.S.C. § 1322 is the statutory section which governs determination of this issue. In a case very similar to the one at bar, bankruptcy Judge R. Thomas Stinnett of the Eastern District of Tennessee had an opportunity to interpret the interaction between §§ 506 and 1322. In that case, styled *In re Larry Eugene Bivvins & Pamela Lynn Bivvins*, 216 B.R. 622, (Bankr.E.D.Tenn.1997), a creditor with a third mortgage on the debtor's principle residence objected to confirmation of the debtor's chapter 13 plan under the home mortgage exception found in 11 U.S.C. § 1322(b)(2). Judge Stinnett overruled the creditor's objection by relying, in part, on the Supreme Court's reasoning as set forth in the case of *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

This Court finds that Judge Stinnett's analysis of the law in the *Bivvins* case is the appropriate method of determining the extent/validity of liens in cases where the total outstanding debt on a particular piece of property exceeds the value of that property. As a result of this finding, the Court today adopts Judge Stinnett's analysis as its own and holds that First Citizen's Bank is a wholly unsecured creditor. Additionally, since First Citizen's has been found to be an unsecured creditor and because no other proof was presented at the trial, the bank's objection to confirmation is overruled.

In *Bivvins*, Judge Stinnett was faced with deciding whether an undersecured creditor's claim could be modified by the debtor's plan under § 1322. In making his decision, Judge Stinnett set out a lengthy and thorough analysis of what constitutes an allowed secured claim and at what point such a claim can be modified:

A claim is undersecured when the value of the collateral is enough to pay only part of the debt it secures. The creditor has an *allowed secured claim* only for the value of the collateral that is available to pay its debt. 11 U.S.C. § 506(a). Section 1325(a)(5) allows cram-down of an undersecured claim. In a cram-down, the debtor can obtain the collateral free of the creditor's lien by paying the present value of the allowed secured claim, not the full amount of the claim. 11 U.S.C. § 1325(a)(5)(B).

The home mortgage exception in § 1322(b)(2) appears to prevent cram-down of an undersecured home mortgage claim, but some courts reached the conclusion that cram-down, or a modified version of cram-down, was allowed. *See, e.g., In re Bellamy*, 962 F.2d 176 (2nd Cir.1992); *In re Hart*, 923 F.2d 1410 (10th Cir.1991), *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3d Cir.1990); *In re Hougland*, 886 F.2d 1182 (9th Cir.1989). The Supreme Court rejected their reasoning and reached the opposite conclusion in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

The Supreme Court agreed with the chapter 13 debtors' argument that "secured claims" in § 1322(b)(2) means "allowed secured claims" under § 506(a). The court explained that the creditor in *Nobelman* had an allowed secured claim since the collateral had value enough to secure $23,500 of the debt. *Nobelman,* [508 U.S. at 328–30], 113 S.Ct. at 2110.

Next, the Supreme Court adopted the obvious interpretation of "rights." It held that "rights" means the secured creditor's rights as they would be outside of bankruptcy. *Nobelman,* [508 U.S. at 328–30], 113 S.Ct. at 2110. The debtors contended the exception applied only to the creditor's rights in bankruptcy as the holder of an allowed secured claim. They based this argument on interpreting "a claim secured only by" a home mortgage to mean "an allowed secured claim secured only by a home mortgage."

The Supreme Court rejected the debtor's argument, but the course of its reasoning obscures its holding. The court held that "a claim secured only by" should be interpreted to mean both components of the undersecured creditor's claim—the allowed secured claim for $23,500 and the unsecured claim for the remainder of the debt. The court pointed out that § 506(a) used essentially the same wording to refer to both parts of an undersecured claim. Thus, the exception was not restricted to the creditor's rights in the chapter 13 case as the holder of an allowed secured claim. *Nobelman,* [508 U.S. at 330–32], 113 S.Ct. at 2111.[1]

This reasoning was not entirely necessary for the court to reach the same overall result. Even if "claim secured only by" means "allowed secured claim secured only by," the result would be the same. This is true under the Supreme Court's earlier interpretation of "rights" to mean the rights the creditor would have outside of bankruptcy, not just its rights in the bankruptcy case as the holder of an allowed

claim. Since the word "rights" appears only once in § 1322(b)(2), it must mean the same thing with regard to every type of claim dealt with by § 1322(b)(2), including an allowed secured claim secured only by a home mortgage. Thus, the rights protected by the home mortgage exception must be the same rights that can be modified. If "a claim secured only by" meant "an allowed secured claim secured only by," the exception would protect the same rights. Thus, the Supreme Court could have said that so long as the creditor has an "allowed secured claim secured only by" a home mortgage, then the exception protects the creditor's rights under its entire claim.

The Supreme Court's failure to say this gives rise to Greentree's argument, though it requires a slightly different view of the Supreme Court's reasoning. According to this view, the Supreme Court did not expressly *require* the creditor to have an allowed secured claim in order to invoke the exception. Furthermore, the Supreme Court dwelled on the broad meaning of "a claim secured only by" as including the creditor's allowed secured claim and its unsecured claim. It follows, according to Greentree's argument, that the exception applies if the creditor does not have an allowed secured claim; it applies to the creditor's claim that is unsecured only because the value of the property is not sufficient to make the claim an allowed secured claim under § 506(a).

To agree with Greentree's argument, the court must interpret the home mortgage exception as broader than the rule to which it is an exception. According to the Supreme Court, the general rule provides that a plan can modify the rights of holders of *allowed* secured claims. Greentree contends the exception applies to the rights of a claimholder who has only an unsecured claim "secured only by" a home mortgage. This is the same thing as saying that § 1322(b)(2) silently repeats the

---

1. The debtors' interpretation of the statute was nonsensical for another reason. If "rights" means only the creditor's right in bankruptcy as holder of an allowed secured claim, then any confirmable plan will not modify those rights.

11 U.S.C. § 1325(a)(1) & (5). There is no need for a statute, such as § 1322(b)(2), that authorizes the plan to modify the creditor's rights and no need for an exception for home mortgages.

home mortgage exception in the subsequent portion of the statute that allows a plan to modify the rights of holders of *unsecured* claims.

Judge Lundin takes this view in his treatise on chapter 13. He reasons that the Supreme Court's decision on the meaning of "a claim secured only by" a home mortgage serves no purpose unless it was intended to make the exception apply without regard to whether the home mortgage gives the creditor an allowed secured claim. 1 Keith A. Lundin, *Chapter 13 Bankruptcy* § 4.46 at 4–56 (1994).

Why did the Supreme Court decide whether "a claim secured only by" refers to the creditor's allowed secured claim or its entire claim? Earlier in the opinion the Supreme Court's held that the "rights" protected by the exception are the rights the creditor would have outside bankruptcy, not just its rights in the chapter 13 case as holder of an allowed secured claim. The debtors argued, in effect, that "a claim secured only by" put a restriction on this definition. It protected only the creditor's rights in bankruptcy as holder of an allowed secured claim. The Supreme Court disagreed. It held that "a claim secured only by" refers to the entire claim; it does not restrict the protected rights to the rights the creditor has in the chapter 13 case as holder of an allowed secured claim. The Supreme Court's reasoning disposed of the debtor's argument that "a claim secured by" put a restriction on the court's interpretation of "rights." This reasoning was not absolutely necessary to reach the same overall result, but it served a purpose nevertheless. In this regard, the court observes that courts do not always take the shortest logical route to a decision. Rejecting all the wrong arguments on the simplest grounds can be the most efficient and conservative way of deciding a case.

If the Supreme Court intended to make the exception apply to creditors without allowed secured claims, it certainly could have made the point clearly. The steps in Greentree's argument reveal that the opinion is not clear at all on this point. Furthermore, during the crucial part of the opinion the Supreme Court left no doubt it was dealing with an undersecured claim and a creditor with an allowed secured claim. *Nobelman,* [508 U.S. at 330–32], 113 S.Ct. at 2111.

Greentree is not the holder of an allowed secured claim. Therefore, the portion of § 1322(b)(2) that allows a plan to modify the rights of holders of allowed secured claims is irrelevant to how the plan can deal with Greentree's claim. Likewise, the home mortgage exception is irrelevant since it is contained within that portion of § 1322(b)(2). The plan can modify Greentree's rights as the holder of an unsecured claim.

The great majority of reported decisions have reached the same conclusion. *In re Geyer,* 203 B.R. 726 (Bankr.S.D.Cal.1996); *In re Sanders,* 202 B.R. 986 (Bankr.D.Neb. 1996); *In re Libby,* 200 B.R. 562 (Bankr. D.N.J.1996); *In re Purdue,* 187 B.R. 188 (S.D.Ohio 1995); *In re Lee,* 177 B.R. 715 (Bankr.N.D.Ala.1995); *Norwest Financial Georgia, Inc. v. Thomas (In re Thomas),* 177 B.R. 750 (Bankr.S.D.Ga.1995); *In re Mitchell,* 177 B.R. 900 (Bankr.E.D.Mo. 1994); *Castellanos v. PNC Bank (In re Castellanos),* 178 B.R. 393 (Bankr.M.D.Pa. 1994); *In re Woodhouse,* 172 B.R. 1 (Bankr.D.R.I.1994); *In re Sette,* 164 B.R. 453 (Bankr.E.D.N.Y.1994); *In re Moncrief,* 163 B.R. 492 (Bankr.E.D.Ky.1993); *In re Lee,* 161 B.R. 271 (Bankr.W.D.Okla. 1993); *In re Williams,* 161 B.R. 27 (Bankr. E.D.Ky.1993); *In re Kidd,* 161 B.R. 769 (Bankr.E.D.N.C.1993); *In re Hornes,* 160 B.R. 709 (Bankr.D.Conn.1993); *In re Plouffe,* 157 B.R. 198 (Bankr.D.Conn.1993). A few have agreed with Greentree's argument. *In re Jones,* 201 B.R. 371 (Bankr. D.N.J.1996); *In re Barnes,* 199 B.R. 256 (Bankr.W.D.N.Y.1996); *In re Neverla,* 194 B.R. 547 (Bankr.W.D.N.Y.1996).

The court realizes that its interpretation of the statute creates a cut-off point that depends on the valuation of the debtor's home. If the creditor's claim is barely an allowed secured claim under § 506(a), then the exception protects the creditor's rights from modification. For example, the creditor's allowed secured claim may be $500 out of a $10,000 claim; the exception will

apply. On the other hand, if the higher priority liens barely exceed the value of the property, then the creditor's rights will not be protected by the home mortgage exception and can be modified. For example, the higher priority liens may secured debts totaling $50,000 on property valued at $49,500. The creditor's lower priority mortgage will not give it any allowed secured claim, and as a result, its entire claim will not be protected by the home mortgage exception. The law sometimes uses cut-off points such as this even if they appear to be unfair. *See, e.g.,* 11 U.S.C. §§ 109(e), 507(a)(3)–(6), 522(d), 523(a)(2)(C) & 547(c)(8). The structure of § 1322(b)(2), however, does not support the conclusion that the exception applies when the claimholder does not have an allowed secured claim.

Based on the foregoing analysis set forth by Judge Stinnett in *Bivvins,* this Court finds that First Citizens third mortgage on the debtor's sixty-three acre farm is an entirely unsecured claim. Smith's property is worth $135,000.00. The first mortgage totals $111,405.14. The second mortgage totals $32,310.50. These two figures added together exceed the value of the house by over $8000.00. As a result, there is no value left in the house to secure the third mortgage. While this is a regrettable result for First Citizens, it is the only equitable one this Court may make given the current nature of the code and the law. An order will be entered in accordance herewith.

### III. ORDER

It is therefore **ORDERED** that First Citizens Bank is an unsecured creditor of the debtor's chapter 13 estate.

It is further **ORDERED** that First Citizens Bank objection to confirmation of the debtor's chapter 13 plan is overruled.

**IT IS SO ORDERED.**